UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

MATT FOSTER,                    )
                               )
            Plaintiff,         )
                               )
v.                             )        No.:   1:18-CV-270-TAV-CHS
                               )
ROADTEC, INC.,                 )
                               )
            Defendant.         )

**MEMORANDUM OPINION**

This civil case is before the Court on defendant's motion for summary judgment [Doc. 19]. Defendant moves the Court to enter summary judgment in its favor on plaintiff's interference and retaliation claims under the Family Medical Leave Act ("FMLA"). Plaintiff has responded in opposition [Doc. 21], and defendant has replied [Doc. 22]. Defendant has also filed a notice of supplemental authority in support of its motion for summary judgment [Doc. 33]. The motion is thus fully briefed and ripe for resolution. Because plaintiff fails to provide evidence to create a genuine issue of material fact as to whether defendant's reasons for including plaintiff in the RIF were pretextual, defendant's motion for summary judgment [Doc. 19] will be **GRANTED**, and this action will be **DISMISSED**.

I.      **Background**

Defendant Roadtec, Inc. is a Chattanooga-based manufacturer of roadbuilding and asphalt-paving equipment [Doc. 19-1, ¶ 3]. Defendant's production line is divided into "Cells:" the Buggy Cell, the Mill Cell, the Paver Cell, and the Stabilizer Cell [*Id.*, ¶ 4]. In

September 2016, defendant hired plaintiff Matt Foster as a full time "Metal Prep I" in its Stabilizer Cell [*Id.*, ¶ 5; Doc. 19-4, ¶ 3], the department of defendant's production line responsible for manufacturing soil stabilizers and road reclaimers [Doc. 19-1, ¶ 4]. Plaintiff states that he was initially hired as a Metal Prep I in the Buggy Cell but, at his request, was later transferred to the Stabilizer Cell [Doc. 21-3 p. 104]. In the Cells, there are three tiers of Metal Preps [Doc. 19-1, ¶ 7]. According to defendant, a Metal Prep I, whose responsibilities include "operating the brake press and assisting with layout" [*Id.*, ¶ 6], can advance to a Metal Prep II, and then to a Metal Prep III (the highest designation) "by expanding his skill set and completing training on other work stations within a cell" [*Id.*, ¶ 7]. A Metal Prep III in the Stabilizer Cell can perform the tasks of a Metal Prep I in addition to operating three other stations without supervision [*Id.*]. However, according to plaintiff, these are, in large part, distinctions without difference: A higher designation results in a higher pay [Doc. 21-3, p. 101], but one's designation is more an indication of workplace politics than an employee's skill set or the number of machines he or she is capable of operating [*Id.* at 102, 109–10]. Plaintiff also contends that there is no distinction between Metal Preps from one Cell to another [*Id.* at 108–09].

In April 2018, following the birth of his daughter, plaintiff requested, was approved for, and took continuous FMLA leave for just under three (3) weeks [Doc. 19-4, ¶ 5]. On June 26, 2018, plaintiff's wife, Chastity Foster, was severely injured in an automobile accident [Doc. 21-1, ¶ 2]. Immediately after the accident, plaintiff took continuous FMLA

2

leave to care for his wife and their daughter [*Id.*, ¶ 3]. These two periods of continuous FMLA leave are not the subject of this lawsuit [Doc. 21-3, pp. 16–17].

Plaintiff returned to work on August 13, 2018 [Doc. 21-3, p. 16]. He alleges that he explained to his supervisors and defendant's human resources department that he "would have to take off occasionally to care for Chastity" as "[s]he had an additional surgery scheduled on August 29, 2018" [Doc. 21-1, ¶ 5]. According to plaintiff, because his future absences would be intermittent, as opposed to continuous, he "was instructed to make [his] supervisors aware through a calendar or log and they would record the FMLA" [*Id.*; *see also* Doc. 21-3, p. 27]. Plaintiff recalls that he was absent eight (8) to nine (9) days, including September 24, 2018, after returning to work in August 2018 [Doc. 21-1, ¶ 5]. And he claims that he "always" followed this procedure when taking this intermittent FMLA leave [*Id.*], specifically by providing his supervisor, Ray Mitchell, with an "FMLA calendar" that identified those eight (8) to nine (9) days after August 13, 2018, when plaintiff took intermittent FMLA leave [Doc. 23-1, pp. 18, 24].

Defendant reports, however, that its human resources department has no record of these absences [Doc. 19-4, ¶ 9]. Defendant's director of human resources, Deborah Bowman, testified that she asked Mr. Mitchell if he had plaintiff's FMLA calendar and that Mr. Mitchell "said it was never given to him" [Doc. 21-5, p. 9]. Plaintiff contends that Mr. Mitchell, who, if he was in receipt of plaintiff's FMLA calendar, was obligated to submit it to human resources [*Id.* at 8], must have "thr[own] it away" [Doc. 23-3, p. 28] instead of giving it to human resources. Ultimately, because his FMLA calendar was not

tendered to defendant's human resources department, plaintiff's intermittent absences were not designated as FMLA leave [Doc. 21-5, p. 8]. Plaintiff did not, however, receive any warnings or discipline for unexcused absences between August 13, 2018, and October 9, 2018 [Doc 21-3, pp. 57–62]. Nor did he accrue any "points" under defendant's attendance policy [*Id.*], which provided that employees would be assigned points for certain unexcused absences and, after accruing a certain number of points, an employee would be terminated [*Id.* at 58–59; Doc. 19-4, ¶¶ 14–15].

In September 2018, in light of, among other factors, an accumulation of an "excessive amount of unsold inventory" [Doc. 19-1, ¶ 9], defendant's management determined that a reduction in force ("RIF") would be necessary [*Id.*, ¶ 8]. To determine the necessary extent of the RIF, defendant's management prepared a 12 to 18 month sales forecast [*Id.*, ¶ 10]. Based on this forecast, and considering defendant's unsold inventory, defendant's Vice President of Operations, Timothy Lewis, estimated how many new products would need to be manufactured in each Cell to meet the forecasted demand [*Id.*]. Mr. Lewis then determined how many hours, broken down by job title and Cell, would be necessary to complete the production schedule [*Id.*, ¶¶ 11, 13].

Defendant's human resources department compiled a list of names, job titles, and years of service of those employees that were to be considered for the RIF (i.e., all "Manufacturers Road shop employees") and submitted it to Mr. Lewis [Doc. 19-4, ¶ 17; Doc. 21-5, p. 17]. Mr. Lewis states that he selected employees from this list for inclusion in the RIF based on the following criteria: (1) job title, (2) skill set, and (3) seniority

[Doc. 19-1, ¶ 12]. Specifically, having deduced how many employees with a particular job title in a particular Cell were needed to complete the scheduled production, Mr. Lewis designated specific employees for inclusion in the RIF by ranking the employees by skill set and seniority, giving preference to employees with the most comprehensive skill sets and the most seniority (e.g., "a Fitter/Welder III with eleven years of experience would be given preference over a Fitter/Welder I with only two years of experience") [*Id.*, ¶ 13]. Based on this criteria, Mr. Lewis designated specific employees, including plaintiff, for inclusion in the RIF [*Id.*, ¶ 18].

Notably, the criteria used to select employees for inclusion in the RIF departed in respects from the RIF policy in defendant's employee manual [Doc. 19-7]. The manual provides:

> **REDUCTION IN FORCE (RIF/LAYOFF)**
> Roadtec will make every effort to avoid a layoff. However, if an economic hardship creates a situation that makes it necessary for Roadtec to cut back its work force, each job will be carefully considered along with an employee's work record. *Business needs, qualifications, knowledge, skill, versatility, experience, performance, attendance record and past disciplinary actions will be the guidelines upon which such decisions are made. Length of service will be considered only in those cases where the previously stated factors are equal.*

[*Id.* at 4 (emphasis added)]. Specifically, length of service or seniority was the core criteria in Mr. Lewis's determination [*see id.*; Doc. 19-1, ¶ 13]. Additionally, according to Mr. Lewis and Ms. Bowman, attendance was not considered in designating employees for the RIF [Doc. 19-1, ¶ 16; Doc. 19-4, ¶¶ 21–22].

5

The list of the employees designated for inclusion in the RIF by Mr. Lewis was tendered to Ms. Bowman for her review "with an eye toward any HR-related issues of concern" as well as legal counsel [Doc. 19-4, ¶ 18; *see also* Doc. 19-1, ¶ 14]. On October 4, 2018, Ms. Bowman emailed Mr. Lewis stating that plaintiff's inclusion in the RIF gave her "heartburn" due to his FMLA leave [Doc. 19-6, p. 2]. But ultimately, she concluded that his inclusion in the RIF "follows the same logic as the others (newest in job title by cell)" and did not recommend that plaintiff be removed from the RIF [*Id.*].

Mr. Lewis attests that, along with attendance generally, he did not consider FMLA leave in designating employees for the RIF [Doc. 19-1, ¶ 16]. Indeed, he states that when he compiled the list of employees to be included in the RIF, he did not have any knowledge or information regarding any employee's FMLA leave [*Id.*, ¶ 18] and he did not know that plaintiff in particular had taken FMLA leave until Ms. Bowman informed him in her October 4, 2018 email [Doc. 19-6].

On October 9, 2018, defendant announced the RIF [Doc. 19-1, ¶ 15; Doc. 21-1, ¶ 7]. Thirty-eight (38) employees were included in the RIF, twenty-nine (29) of whom worked in the production Cells [*Id.*]. Out of the twenty-five (25) employees working in the Stabilizer Cell, seven (7)—twenty-eight percent (28%)—were included in the RIF [Doc. 19-1, ¶¶ 15, 20]. Four (4) of those seven (7) were Metal Prep Is. Indeed, only two

6

(2) Metal Preps in the Stabilizer Cell were not included in the RIF, both of whom were Metal Prep IIIs [Doc. 19-4, ¶¶ 25–26].[1]

According to plaintiff, Mr. Lewis reported to those included in the RIF that "the criteria was 'needs based' and then 'some seniority'" and also stated that there were no "Red Hats," a term for those employed by defendant for six months or less, left to lay off in the RIF [Doc. 21-1, ¶ 7; *see also* Doc. 21-3, pp. 22–23]. Plaintiff states that this was untrue and that there were in fact "Red Hats" still working for defendant [Doc. 21-2, ¶ 7].

Plaintiff also contends that the only criteria set forth in the RIF policy in the employee manual that applies to him is attendance [Doc. 21-3, p. 23]. Based on this, he claims that defendant considered his intermittent absences after returning to work on August 13, 2018, which were not recorded by defendant as FMLA and thus made it appear as though he was absent without justification [*Id.* at 29, 39–40], in determining that he should be included in the RIF. Plaintiff alternatively claims that "the policy was consciously disregarded so the company [could] pick who it wanted" [Doc. 21, p. 7]. Plaintiff repeatedly acknowledges that he does not know what was considered in determining who would be laid off in the RIF [*Id.* at 30] but argues that if his absences had

---

[1] In early 2019, defendant rehired several employees who were laid off as part of the 2018 RIF, including plaintiff [Doc. 20, p. 11]. In October 2019, plaintiff's employment was terminated as part of a subsequent RIF, which included thirty-eight (38) other employees [*Id.*]. Plaintiff's complaint [Doc. 1] alleges retaliation arising out of the 2018 RIF. Plaintiff's response to defendant's motion for summary judgment alleges additional claims of retaliation in relation to events occurring after the 2018 RIF [Doc. 21, p. 17]. It is well established that plaintiff cannot raise new claims in response to a motion for summary judgment. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 817 (6th Cir. 2020). Thus, the Court will only address plaintiff's retaliation claim that relates to the 2018 RIF.

been recorded as FMLA, he believes, with "no doubt," that he would have escaped inclusion in the RIF [Doc. 21-3, p. 65].

## II.    Legal Standard

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). Accordingly, all facts and the inferences to be drawn from them must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis ex rel. Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). Likewise, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (internal quotation marks omitted). That is, the nonmoving party must point to evidence in the record upon which a reasonable factfinder could find in its favor. *Anderson v. Liberty*

8

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue of fact must be material, in that it might affect the outcome of the suit under governing law. *Id.*

The Court's function at the summary judgment stage is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson*, 477 U.S. at 250. Thus, the Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. The Court also does not search the record "to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479–80. In short, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a trier of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

Under the FMLA, an eligible employee is entitled to twelve (12) weeks of unpaid leave during any twelve (12) month period to, *inter alia*, care for certain family members suffering from serious medical problems or care for a newborn child of the employee. *See* 29 U.S.C. § 2612(a)(1). The FMLA makes it unlawful for any qualifying employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]," § 2615(a)(1), or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the [the Act]." § 2615(a)(2).

The Sixth Circuit recognizes two discrete theories by which an aggrieved party may recover under the FMLA: (1) interference pursuant to 29 U.S.C. § 2615(a)(1) and

9

(2) retaliation pursuant to 29 U.S.C. § 2615(a)(2). *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012); *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). The interference theory permits recovery for interference with an entitlement provided by the FMLA "regardless of the intent of the employer." *Ritenour v. Tenn. Dep't of Human Servs.*, 497 F. App'x 521, 530 (6th Cir. 2012) (quoting *Hoge*, 384 F.3d at 244); *see also Seeger*, 681 F.3d at 828 (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003)). In contrast, the retaliation theory requires that plaintiff show malintent on the part of the employer, specifically that the employer acted against the plaintiff *because* the plaintiff invoked his or her FMLA rights. *Seeger*, 681 F.3d at 508 (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)).

In the instant case, plaintiff brings a claim under each theory [*see* Doc. 1] and, as is typical in FMLA cases, supports these claims with circumstantial evidence. Accordingly, the *McDonnell Douglas* burden-shifting framework applies to plaintiff's claims. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012) (noting that the *McDonnell Douglas* burden-shifting framework applies to both interference and retaliation claims under the FMLA); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). The tripartite *McDonnell Douglas* burden-shifting framework requires that a plaintiff first make a prima facie case of interference and retaliation. *Donald*, 667 F.3d at 761. Where a plaintiff successfully makes this showing, the burden then shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse action. *Id.* If the employer presents

10

such a reason, the burden shifts back to the plaintiff to show that the stated reason is a

pretext for unlawful discrimination.  *Id.* at 761–62.[2]

---

[2] Defendant argues that, because plaintiff was terminated as part of a RIF, plaintiff bears a higher burden to prove that his termination was discriminatory [Doc. 20, p. 13]. The Sixth Circuit has held that, in age-discrimination cases involving a RIF, plaintiff "does not make out a prima facie case absent additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons."  *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (citing *LaGrant v. Gulf and Western Mfg. Co.*, 748 F.2d 1087, 1090 (6th Cir. 1984)).  This heightened burden also applies in RIF cases alleging discrimination under Title VII.  *See Peeples v. City of Detroit*, 891 F.3d 622, 634 (6th Cir. 2018). It does not appear, however, that the Sixth Circuit has applied the heightened burden from *Barnes* to RIF cases alleging FMLA interference or retaliation.

Although retaliation and discrimination are synonymous theories in the context of FMLA claims, *see Seeger*, 681 F.3d at 282 (recognizing "the 'retaliation' or 'discrimination' theory arising from § 2615(a)(2)"), the same cannot be said in the context of claims under Title VII and the Age Discrimination in Employment Act ("ADEA").  *See Laster v. City of Kalamazoo*, 746 F.3d 714, 719 (6th Cir. 2014) (noting that Title VII discrimination and Title VII retaliation are different claims with "different elements"); *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283–90 (6th Cir. 2012) (analyzing ADEA retaliation and ADEA discrimination as two separate claims). To satisfy the fourth element of a prima facie case of discrimination under either Title VII or the ADEA, a plaintiff must show that a person outside of the protected class replaced, or was treated more favorably than, the plaintiff.  *Laster*, 746 F.3d at 727; *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021).  By requiring a higher burden in RIF cases, *Barnes* thus "modified the fourth element" of such claims.  *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009). Conversely, to establish a prima facie case of interference or retaliation under the FMLA, the plaintiff need not show that a person outside of the protected class replaced, or was treated more favorably than, the plaintiff.  *See Donald*, 667 F.3d at 761 (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).

The Court recognizes that a 2010 case from this district, which defendant cites in its brief [Doc. 20, p. 13], applied the heightened standard from *Barnes* to claims for interference and retaliation under the FMLA.  *See Payne v. Goodman Mfg. Co., L.P.*, 726 F. Supp. 2d 891, 901 (E.D. Tenn. 2010).  In doing so, the court cited *Grzybowski v. DaimlerChrysler Servs. N. Am., L.L.C.*, No. 05-71286, 2006 WL 1374050, at *4 (E.D. Mich. May 17, 2006) as support.  However, the plaintiff in *Grzybowski* alleged age discrimination in violation of the ADEA and gender discrimination in violation of Title VII.  *Grzybowski*, 2006 WL 1374050, at *1.  Thus, because the case involved a RIF, the court, in accordance with Sixth Circuit precedent, required the plaintiff to meet a higher burden to establish a prima facie case of discrimination under Title VII and the ADEA.  *Id.* at *6.  *Grzybowski* did not involve claims for interference or retaliation under the FMLA.  Further, unlike the *Grzybowski* court's imposition of the higher burden from *Barnes* at the prima facie stage, in *Payne*, the court appeared to apply the higher burden to its pretext analysis. *See Payne*, 726 F. Supp. 2d at 901.  The Court is not bound by its decision in *Payne*.  And, in light of the dissimilar nature of FMLA claims when compared to discrimination claims under Title VII

11

The Court will address each of plaintiff's FMLA claims in turn.

## A.    Interference

To state a prima facie case of interference, a plaintiff has the burden to establish that (1) plaintiff is an "[e]ligible employee," § 2611(2); (2) defendant is an "[e]mployer," § 2611(4); (3) plaintiff was entitled to leave under the FMLA, § 2612(a)(1); (4) plaintiff gave defendant notice of his intention to take leave, § 2612(e)(1); and (5) defendant denied plaintiff FMLA benefits to which he was entitled. *Donald*, 667 F.3d at 761 (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)); *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)).   Here, defendant does not challenge the first four elements of plaintiff's prima face case [Doc. 20, p. 14].   Accordingly, the fifth element—defendant having denied plaintiff FMLA benefits to which he was entitled—is the only element in dispute.

Based on 29 C.F.R. § 825.220(c), which provides that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions," the Sixth Circuit has held that the fifth element includes a "negative-factor analysis." *Wysong*, 503 F.3d at 447 (citation omitted).   It follows that the fifth element is satisfied if the plaintiff establishes that the employer has

---

and the ADEA, in addition to the dearth of Sixth Circuit case law supporting a contrary conclusion, the Court will not extend the heightened burden in *Barnes* to plaintiff's claims in this case.  *See Seil v. Keystone Auto., Inc.*, 678 F. Supp. 2d 643, 651 (S.D. Ohio 2010) (concluding that the heightened burden applicable in discrimination claims involving a RIF does not apply to FMLA retaliation claims involving a RIF).

"somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations." *Id.* (quoting *Bradley v. Mary Rutan Hosp.*, 322 F. Supp. 2d 926, 940 (S.D. Ohio 2004)); *see also Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) ("An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir.1998))). In other words, "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Wysong*, 503 F.3d at 447. And "[t]his denial of benefits amounts to interference under the FMLA."[3] *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 632 (6th Cir. 2018) (citing *Wysong*, 503 F.3d at 447).

---

[3] Accordingly, the Sixth Circuit has held that retaliatory discharge may give rise to a claim under both the interference theory and the retaliation theory. *Wysong*, 503 F.3d at 446–47. However, the Sixth Circuit has clarified:

> As a rule of thumb, where a plaintiff does not dispute that she has been granted all of the FMLA leave that she requested, has received all of the leave to which she was entitled, and has been reinstated upon her return to work, "the essence" of the plaintiff's claim is likely a retaliation claim, not an interference claim, regardless of the conclusory labels under which it has been pled.

*Wallner v. Hilliard*, 590 F. App'x 546, 551 (6th Cir. 2014) (citing *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012)). Here, although defendant granted all of plaintiff's requests for FMLA leave, and plaintiff was reinstated to his position upon return, the parties agree that defendant did not designate plaintiff's eight (8) to nine (9) absences as FMLA leave [Doc. 20, p. 3]. The Court finds this fact distinguishable from cases in which the "essence" of the claim is retaliation, not interference. *See also* 29 C.F.R. § 825.301 ("If an employer's failure to timely designate leave in accordance with § 825.300 causes the employee to suffer harm, it may constitute an interference with, restraint of, or denial of the exercise of an employee's FMLA rights."). Plaintiff in this case alleges that, because defendant failed to designate his leave as FMLA, his absences were used against him when defendant determined who to include in the RIF, thus

The issue here, therefore, is whether the summary judgment record reflects a material dispute of fact as to whether plaintiff's FMLA-protected leave was a negative factor in defendant selecting plaintiff for inclusion in its RIF, the "employment action" in this case. "[P]laintiff must 'proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Payne v. Goodman Mfg. Co., L.P.*, 726 F. Supp. 2d 891, 900 (E.D. Tenn. 2010) (quoting *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990)).

Plaintiff's theory as to his interference claim is as follows: Plaintiff took eight (8) or nine (9) days of intermittent FMLA leave after August 13, 2018; plaintiff gave his supervisors notice of this leave but defendant failed to timely record these absences as FMLA; as a result, defendant mistook plaintiff's intermittent FMLA leave for unexcused absences; defendant considered its employees' attendance records in determining which employees to include in the RIF; and thus, defendant used plaintiff's absences as a negative factor in deciding to include him in the RIF. Simply put, plaintiff's interference claim is that "[d]efendant denied the timely designation of FMLA leave resulting in the false impression that Plaintiff was absent without justification, resulting in his being chosen for layoff" [Doc. 1, ¶ 21].

---

alleging an interference claim. Plaintiff also alleges that defendant included him in the RIF for taking FMLA leave, thus alleging a retaliation claim. The distinction is tedious, and ultimately without a significant difference. However, the Court will analyze plaintiff's interference and retaliation claims separately.

14

Defendant argues that plaintiff's interference claim cannot survive summary judgment because plaintiff has failed to provide sufficient evidence that defendant used his FMLA leave as a negative factor in electing to include him in the RIF [Doc. 20, p. 16]. Specifically, defendant points to the lack of evidence that defendant mistook plaintiff's intermittent FMLA leave for unexcused absences [*Id.* at 16–17] or that attendance record was considered in determining which employees would be included in the RIF [*Id.* at 17–18].

In his response, plaintiff points to seven pieces of evidence, which he argues, when considered cumulatively, establish the fifth element of his interference claim: (1) temporal proximity between the absences and plaintiff's inclusion in the RIF, (2) defendant's written RIF policy, which considers attendance record, (3) the fact that some "Red Hats" survived the RIF, (4) Ms. Bowman's expressed concern about FMLA interference, (5) the fact that a trainee replaced plaintiff after the RIF, (6) the fact that defendant's purported criteria for the call-back was not followed, and (7) the fact that defendant interfered with plaintiff's post-layoff opportunities [Doc. 21, pp. 4–5].[4]

---

[4] The Court notes that, in some respects, plaintiff's argument conflates the fifth element of an interference claim with pretext, the third step in the tripartite *McDonnell Douglas* burden-shifting framework. For example, plaintiff cites *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414 (6th Cir. 1999), for the proposition that "[s]howing that *replacement* occurred can also satisfy the last element of a prima facie case in a RIF" [*Id.*]. However, as previously mentioned, the fourth element of a prima facie case of discrimination is that a person outside of the protected class replaced, or was treated more favorably than, plaintiff. *See supra* note 2; *see also Skalka*, 178 F.3d at 420. And even disregarding the absence of a similar prima facie element in FMLA interference and retaliation claims, plaintiff fails to allege that he was replaced by, or treated less favorably than, employees who had not taken FMLA leave. Instead, plaintiff argues that persons with "less seniority" replaced him [Doc. 21, p. 11]. This assertion has no bearing on whether defendant's FMLA leave was a negative factor in defendant's decision to

15

Plaintiff argues that the temporal proximity between his last alleged FMLA absence and his termination raises the inference that his FMLA leave was a negative factor in defendant's decision to terminate plaintiff's employment [Doc. 21, pp. 4–5]. The Sixth Circuit has stated that while "'temporal proximity alone will not support an inference in the face of compelling evidence' to the contrary, 'the proximity in time between protected activity and adverse employment action may give rise to an inference of a causal connection.'" *Ford v. General Motors Corp.*, 305 F.3d 545, 554–55 (6th Cir. 2002) (quoting *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir. 1987)). "Thus, in certain instances, temporal proximity is sufficient indirect evidence of causation to satisfy this element." *Payne v. Goodman Mfg. Co., L.P.*, 726 F. Supp. 2d 891, 900 (E.D. Tenn. 2010) (citing *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding three-month lapse between employee's protected act and the termination of his employment sufficient to establish causation at summary judgment)).

Here, the parties do not dispute that plaintiff's employment was terminated as part of a RIF on October 9, 2018, fifteen (15) days after plaintiff's last FMLA absence [*see* Doc. 21, p. 5; Doc. 22, p. 6]. Yet, "contrary to [plaintiff's] implicit assumption, the relevant timeframe for us to consider . . . is the 'time after an employer learns of a protected activity.'" *See Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 452 (6th Cir. 2017) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)); *see also*

---

include him in the RIF. Instead, proof of replacement by persons with less seniority would constitute evidence of pretext. Thus, the Court will reserve consideration of this argument for its pretext analysis.

16

*Payne v. Goodman Mfg. Co., L.P.*, 726 F. Supp. 2d 891, 900–01 (E.D. Tenn. 2010) (holding that temporal proximity established a prima facie FMLA interference claim where employee employment was terminated as part of a RIF approximately two weeks after requesting FMLA leave); *Njaim v. FCA US LLC*, No. 3:16CV1351, 2018 WL 3629591, at *6 (N.D. Ohio July 31, 2018) (finding relevant timeframe for consideration of temporal proximity to be the time after employee requested intermittent FMLA leave, not the time after employee actually took FMLA leave); *Crumpley v. Anderson Cnty., Tenn.*, No. 3:14-CV-559-PLR-CCS, 2016 WL 614693, at *2 (E.D. Tenn. Feb. 16, 2016) (concluding that temporal proximity established a prima facie case of both interference and retaliation where employee was terminated six (6) days after requesting FMLA leave). Thus, the relevant timeframe in this case is the period between August 13, 2018,[5] when plaintiff informed human resources that he would need intermittent FMLA leave to care for his wife [Doc. 21-1, ¶ 5], and October 9, 2018, when plaintiff's employment was terminated [Doc. 21, p. 2]. Because a period of two months is sufficient to meet the low burden of proof required to establish a prima facie case, *see Seeger*, 681 F.3d at 283, the Court finds that plaintiff has presented evidence to support a finding that plaintiff's FMLA-

---

[5] The record is unclear as to the exact date that plaintiff informed human resources of his need for FMLA leave [*Compare* Doc. 19-2, p. 8 (indicating that plaintiff informed human resources some time prior to returning to work on August 13, 2018), *with* Doc. 21-1, ¶ 5 (indicating that plaintiff informed human resources upon returning to work)]. However, because defendant has not provided evidence that plaintiff requested FMLA leave on an earlier date, the Court will use August 13, 2018, as the date plaintiff informed human resources of his need for intermittent FMLA leave.

protected leave was a negative factor in defendant selecting plaintiff for inclusion in its RIF.

**B.    Retaliation**

Plaintiff also claims that defendant terminated his employment in retaliation for taking FMLA leave [Doc. 21, p. 15].  To state a prima facie case of FMLA retaliation under 29 U.S.C. § 2615(a)(2), plaintiff must show that "(1) he was engaged in a statutorily protected activity; (2) [his employer] knew that he was exercising his FMLA rights; (3) he suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action."  *Seeger*, 681 F.3d at 283 (citing *Donald,* 667 F.3d at 761).  Distinct from the interference theory, under the retaliation theory, "[t]he employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights."  *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (citing *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 885 (7th Cir. 2005)).  Again, only the final element of the prima facie showing is in dispute here.

Defendant argues that plaintiff "cannot satisfy the fourth element—causal connection—because he alleges he was laid off by mistake, not design" [Doc. 20, p. 23]. Neither party disputes that defendant failed to record the eight (8) to nine (9) absences that plaintiff incurred between August 13, 2018 and October 9, 2018 [Doc. 20, p. 4; Doc. 21, pp. 3–4].  But defendant asserts that plaintiff cannot establish motive, since pursuant to plaintiff's theory of the case, defendant "mistakenly failed to record [plaintiff's]

18

intermittent FMLA leave" [Doc. 20, p. 23]. Plaintiff responds first by arguing that the same evidence supporting his interference claim establishes a prima facie case of retaliation [Doc. 21, p. 15]. And, in the alternative, plaintiff relies on the cat's paw theory of liability to claim that his supervisor influenced Mr. Lewis's decision to include plaintiff in the RIF [*Id.*].

This Court is unwilling to find that an employer's own failure to document an employee's FMLA absences inhibits the employee from establishing a causal connection. For the purposes of this motion, defendant does not dispute that plaintiff requested, and defendant approved, plaintiff's request for FMLA leave [Doc. 20, p. 3 n.17 ("Roadtec disputes that Foster provided adequate notice and documentation supporting his requests for intermittent leave on specific days. But for the purpose of this Motion, Roadtec accepts as true Foster's testimony on this issue.")]. Defendant's failure to record plaintiff's FMLA absences does not shield defendant from the consequences arising from its knowledge of their existence.

As in plaintiff's interference claim, the temporal proximity between defendant learning of plaintiff's need for intermittent FMLA leave and plaintiff's termination provides "indirect evidence such as to permit an inference of retaliation to arise." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009); *see also Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (finding three-month period between employee's request for FMLA leave and employee's termination sufficient to establish causation). Thus, viewing the

19

evidence in the light most favorable to plaintiff, the Court finds that plaintiff has met the minimal burden of proof required to establish a causal connection between his FMLA leave and his inclusion in the RIF.[6]

### C. Legitimate, Nondiscriminatory Reasons

The burden now shifts to defendant to demonstrate a legitimate, nondiscriminatory reason for plaintiff's termination. *Donald*, 667 F.3d at 761. "[A]n employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (alteration in original) (quoting *Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253, 1262 (10th Cir. 1998)).

---

[6] Because the Court finds that plaintiff has established a prima facie case of FMLA retaliation, the Court will not provide a detailed analysis of plaintiff's alternative argument based on cat's paw liability [Doc. 21, p. 15]. A plaintiff alleging cat's paw liability seeks "to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 377 (6th Cir. 2017) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011)). "Plaintiffs alleging FMLA retaliation based on a cat's paw theory of liability must satisfy the requirements of the *McDonnell Douglas* framework and prove that the decisionmaker was the cat's paw of a biased subordinate, so it makes sense to analyze each issue separately." *Id.* at 379–80. Plaintiff here argues that Mr. Mitchell, a supervisor responsible for determining plaintiff's skill set, "hated absences and was known to state that people who missed were lazy, that people who were out because of an injury 'ought to be fired,' and that people who had to miss were not reliable" [*Id.*]. This vague and speculative statement derives from plaintiff's own affidavit [Doc. 21-1, ¶ 6] and constitutes the only evidence plaintiff provides in support of Mr. Mitchell's "disgust with absences." *See U.S. Structures, Inc. v. J.P. Structures*, 130 F.3d 1185, 1189 (6th Cir. 1997) ("[E]vidence submitted in opposition to a motion for summary judgment must be admissible."). Further, even assuming the correctness of Mr. Mitchell's attitude toward absences, plaintiff provides no evidence that Mr. Mitchell used plaintiff's FMLA leave to negatively assess plaintiff's skill set.

20

The Court finds that defendant has "articulated a legitimate, nondiscriminatory reason for plaintiff's termination, the RIF." *See Crane v. Monterey Mushroom, Inc.*, 910 F. Supp. 2d 1032, 1049 (E.D. Tenn. 2012); *see also Cutcher v. Kmart Corp.*, 364 F. App'x 183, 191 (6th Cir. 2010) (finding that employer met its burden of proof to rebut plaintiff's prima facie case by providing evidence of a RIF); *Payne v. Goodman Mfg. Co., L.P.*, 726 F. Supp. 2d 891, 901 (E.D. Tenn. 2010) (same); *Warpool v. Strategies*, No. 18-13836, 2020 WL 2617868, at *5 (E.D. Mich. May 25, 2020) (same). Defendant explained that it subtracted its unsold inventory from its sales forecast and then "estimated[ed] how many man hours, broken down by job title and Cell, would be necessary to meet the production targets" [Doc. 20, p. 6]. Based on the foregoing calculations, defendant determined that "there was not going to be enough work to maintain the then-current staffing levels in all of the production Cells" [*Id.* at 19–20]. Plaintiff does not dispute defendant's assertion that the backup of unsold inventory necessitated the RIF and admitted that there was "too much inventory," which he estimated was worth at least eighty-million dollars [Doc. 19-2, p. 43].

The Court further finds that defendant has provided a legitimate, nondiscriminatory reason for including plaintiff, rather than another employee, in the RIF. *See Bell v. Prefix, Inc.*, 321 F. App'x 423, 428 (6th Cir. 2009) (requiring employer to explain why plaintiff, rather than another employee in plaintiff's department, was included in the RIF). In determining which employees to include in the RIF, defendant applied the following criteria to each Cell: (1) job title, (2) skill set, and (3) seniority [Doc. 20, p. 20]. Plaintiff does not dispute that every employee in the Stabilizer Cell who shared plaintiff's job title,

21

Metal Prep I, was laid off [*Id.* at 10; Doc. 19-2, p. 34]. Plaintiff further admits that, out of the other three Metal Prep I's, all of whom were included in the RIF, two of them had greater seniority than him [Doc. 19-2, p. 37]. Because defendant has presented substantial evidence that plaintiff's employment was terminated for a legitimate, non-discriminatory reason, defendant has met its burden of rebutting plaintiff's prima facie case.

### D. Pretext

Now, the burden shifts back to plaintiff to show that defendant's proffered reason was "a pretext to mask discrimination." *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). A plaintiff "may show that an employer's proffered reasons for an adverse employment action are pretext for discrimination if the reasons '(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action.'" *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 431 (6th Cir. 2014) (quoting *Seeger*, 681 F.3d at 285). However, the Sixth Circuit has discouraged the rigid application of this three-part test. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009); *see also Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) ("[W]e have never regarded those categories as anything more than a convenient way of marshaling evidence . . . ."). "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen*, 580 F.3d at 400 n.4. Thus, the ultimate inquiry in this case is whether plaintiff has presented sufficient evidence that defendant included plaintiff in the RIF because he took FMLA leave, rather than because he fit the RIF criteria. Although temporal proximity established plaintiff's prima facie case of

22

interference and retaliation, "the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." *Donald,* 667 F.3d at 763.

Plaintiff relies on the same evidence used to support his prima facie case of interference and retaliation: (1) temporal proximity between the absences and plaintiff's inclusion in the RIF, (2) defendant's written RIF policy, which considers attendance record, (3) the fact that some "Red Hats" survived the RIF, (4) Ms. Bowman's expressed concern about FMLA interference, (5) the fact that a trainee replaced plaintiff after the RIF, (6) the fact that defendant's purported criteria for the call-back was not followed, and (7) the fact that defendant interfered with plaintiff's post-layoff opportunity. Plaintiff asserts that the foregoing evidence is sufficient to show that defendant's purported criteria had no basis in fact, did not actually motivate the termination of plaintiff's employment, and was insufficient to motivate his termination [Doc. 21, p. 14]. The Court does not agree.

Plaintiff fails to provide evidence to create a genuine issue of material fact as to whether defendant's reasons for including plaintiff in the RIF were pretextual. First, plaintiff has not shown that defendant did not apply "uniform criteria" [Doc. 21 p. 2], namely (1) job title, (2) skill set, and (3) seniority. Plaintiff attempts to disprove defendant's purported RIF criteria by arguing that "Red Hats" survived the RIF [Doc. 21, p. 8]. But even if "Red Hats" remained after the RIF, plaintiff does not argue that "Red Hats" remained to work as Metal Preps in the Stabilizer Cell after the RIF. The general retention of "Red Hats" does not cast doubt on defendant's assertion that it considered seniority *as among employees with the same job title* [Doc. 19-1, ¶¶ 12–13]. Plaintiff

23

further contends that "[he] was *replaced* by lesser senior persons just being trained" [Doc. 21, p. 11]. However, plaintiff fails to point to any competent proof that "Red Hats" survived the RIF or that a trainee took over his work after the RIF. The only evidence that plaintiff offers in support of these contentions is his own testimony [*see* Doc. 21-1, ¶ 9; Doc. 21-3, pp. 22–23, 120], which, as defendant notes, is speculative and based on hearsay. *See Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 703 (6th Cir. 2000) ("[I]t is well established that hearsay evidence cannot be considered by a trial court ruling on a motion for summary judgment."). As the Court has noted, plaintiff "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Accordingly, the Court does not find that these two arguments are supported by competent summary judgment evidence.

Plaintiff also argues that defendant departed from the RIF criteria when it selected which employees to rehire, despite defendant's assurance that the rehire criteria was the same as the RIF criteria [Doc. 21, p. 11]. Plaintiff asserts that, because defendant rehired plaintiff, but failed to rehire another Metal Prep I in the Stabilizer Cell with greater seniority than plaintiff, defendant "introduced *yet another criteria*—performance or attitudinal" [*Id.* at 12]. However, the Court does not see how this constitutes a departure from defendant's RIF criteria, which included consideration of skill set. Seniority was only one of several criteria defendant alleges to have used in evaluating employees for inclusion in

24

the RIF.  *See Partin v. Weltman Weinberg & Reis Co. LPA*, 666 F. App'x 428, 432 (6th Cir. 2016) (holding that an employer's retention of a lower-rated performer who had not taken FMLA leave was not evidence of pretext where "[p]erformance was only one of five criteria used to rank employees").

Nor has plaintiff shown that the real reason that defendant included him in the RIF was because he took FMLA leave.  Plaintiff argues that Ms. Bowman's email provides evidence that "Foster was being included in the RIF 'due to FML'" [Doc. 21, p. 10]. However, when considered in context, this reading of Ms. Bowman's email to Mr. Lewis is untenable.  The email, which addressed the proposed list of employees to include in the RIF, states, "[t]here are only two that give me heartburn," and then listed "[plaintiff]—Due to FML but your logic is sound and follows the same logic as the others (newest in job title by cell) so I am OK with it" [Doc. 19-6, p. 2].  Ms. Bowman expressed concern from a forward-looking, human resources perspective.  She "mentioned Mr. Foster's FMLA leave to Mr. Lewis as a reason why Roadtec might *not* want to include Mr. Foster in the RIF" [Doc. 19-4, ¶ 22], not as a reason why defendant included plaintiff in the RIF.  Although the Court must draw all reasonable inferences in favor of the nonmoving party, the Court "need not make assumptions that strain credulity."  *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 323 (6th Cir. 2012).  If anything, Ms. Bowman's email provides evidence that defendant applied uniform RIF criteria and included plaintiff in the RIF based on that criteria.

Next, relying on *Coburn v. Rockwell Automation, Inc.*, 238 F. App'x 112 (6th Cir. 2007), plaintiff argues that defendant's failure to abide by the permissive RIF policy in its employee manual supports an inference that defendant included plaintiff in the RIF on the basis of his FMLA leave [Doc. 21, p. 7]. The Court finds *Coburn* distinguishable from the current case. There, the employer's RIF policy provided that temporary employees would "generally" be the first to go. *Id.* at 126. The Court found that the employer's failure to include any of its 15 temporary employees in its RIF could "support an inference that it was determined to lay off employees on the basis of age, rather than their status as temporary or non-temporary." *Id.* However, as previously mentioned, plaintiff here fails to supply competent summary judgment evidence that defendant retained employees in a manner inconsistent with defendant's purported RIF criteria, thus distinguishing plaintiff's case from *Coburn*.

Further, plaintiff's argument that defendant's failure to abide by its permissive RIF policy constitutes a "shift" that provides "key evidence of discrimination" [Doc. 21, p. 6] is misplaced. In *Pierson v. Quad/Graphics Printing Corp.*, which plaintiff cites to support his position, the Sixth Circuit explained:

> Shifting justifications over time calls the credibility of those justifications into question. By showing that the defendants' justification for firing him changed over time, [the plaintiff] shows a genuine issue of fact that the defendants' proffered reason was not only false, but that the falsity was a pretext for discrimination.

749 F.3d 530, 540 (6th Cir. 2014) (quoting *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002)). An employer shifts justifications "[w]hen the justification for

26

an adverse employment action *changes during litigation*."  *Cicero*, 280 F.3d at 592 (emphasis added).  Thus, contrary to plaintiff's argument, an employer does not shift its justification for terminating an employee by failing to abide by its permissive RIF policy.[7]

Based on the record, no rational juror could find that defendant's stated reasons for including plaintiff in the RIF were pretextual.  Four (4) employees in the Stabilizer Cell, including plaintiff, took FMLA leave in 2018 prior to the RIF [Doc. 20, pp. 10–11].  Yet, "[plaintiff] was the only employee in the entire Stabilizer Cell who had taken FMLA leave that was included in the RIF" [*Id.* at 11].  *See Partin v. Weltman Weinberg & Reis Co., LPA*, No. 1:14-cv-216, 2016 WL 67299 (S.D. Ohio Jan. 5, 2016) ("When positions are eliminated due to budget cuts, a defendant's inclusion of employees who have not taken FMLA leave is evidence that the defendant's selections for elimination were not pretextual.").  Every employee in the Stabilizer Cell who shared plaintiff's job title, Metal Prep I, was included in the RIF [*Id.* at 10; Doc. 19-2 p. 34].  *See Smith v. City of Niles*, 505 F. App'x 482, 487–88 (6th Cir. 2012) (affirming district court's finding that plaintiff's inclusion in defendant's RIF was not pretextual when defendant eliminated both positions in plaintiff's department, one of which was held by an employee who had not taken FMLA leave).  Only two Metal Preps in the Stabilizer Cell survived the RIF, and both were Metal Prep III's [Doc. 19-4, ¶¶ 26–27].  One had over 10 years of experience, and the other

---

[7]  Further, even if defendant had used the criteria listed in the employee manual, the Court does not see how this would have produced a different outcome because, again, all Metal Prep I's in the Stabilizer Cell were included in the RIF.

27

worked a different shift than plaintiff [*Id.*, ¶ 27]. Plaintiff further admits that out of the other three Metal Prep I's, all of whom were included in the RIF, two of them had greater seniority than plaintiff [Doc. 19-2 p. 37]. Plaintiff even provided the following explanation as to why the other three Metal Prep I's in the Stabilizer Cell were included in the RIF: one lacked "the skill set," one "didn't have seniority," and the third previously received disciplinary action [Doc. 21-3, pp. 85–86]. Plaintiff's reasoning appears to support defendant's assertion that it considered job title, skill set, and seniority, while seemingly contradicting plaintiff's own conclusion that defendant "just eliminated persons it did not want to keep" [Doc. 21, p. 2].

Plaintiff's "conclusory allegations as to pretext are insufficient to withstand a motion for summary judgment." *Toledo v. Jackson*, 207 F. App'x 536, 538 (6th Cir. 2006). And, as the Court previously stated, temporal proximity alone will not support a finding of pretext. Thus, the Court finds that plaintiff has failed to show that defendant's proffered reasons for plaintiff's termination were pretextual.

## IV. Conclusion

Because plaintiff has failed to demonstrate an issue of material fact as to whether defendant's proffered reasons for plaintiff's termination were pretextual, summary judgment is appropriate. Accordingly, Roadtec's Motion for Summary Judgment [Doc. 19] will be **GRANTED**, and this action will be **DISMISSED**. All pending motions

[Docs. 26, 28, 31] will be **DENIED** as moot.  The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

 IT IS SO ORDERED.

s/ Thomas A. Varlan_____
UNITED STATES DISTRICT JUDGE
